UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANNE WOCHNER | ) | CASE NO.  1:16CV347 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Anne Wochner Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her September 26, 2014 decision in finding that Plaintiff was not disabled because she retained the residual functional capacity (RFC) to perform a range of light work with certain restrictions (Tr. 11-17).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

I.     PROCEDURAL HISTORY

Plaintiff, Anne Wochner, filed her application for DIB and SSI on July 22, 2012, alleging she became disabled on May 14, 2003 (Tr. 84, 158, 165).  Plaintiff's application was denied initially and on reconsideration (Tr. 114, 117, 123, 126).  Plaintiff requested a hearing before an ALJ, and on June

1

17, 2014, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ. Deborah Lee, a vocational expert, also testified (Tr. Tr. 22-53, 132).

On September 26, 2014, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 11-17).  Plaintiff requested a review before the Appeals council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-3, 5).  Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g) and 1383(c).


II.    **STATEMENT OF FACTS**

Plaintiff was born on June 4, 1963, which made her thirty-nine years old as of her alleged onset date, and fifty-one years old at the time of the hearing (Tr. 25, 158).  Plaintiff is a high school graduate and attended some college (Tr. 26).   Plaintiff has no past relevant work of a gainful nature (Tr. 30-31, 49).


III.   **SUMMARY OF MEDICAL EVIDENCE**

In July 2012, Michael Harris, M.D. and Jahan Hashem, M.D. of the MetroHealth System Physical Medicine and Rehabilitation (PM&R) Clinic evaluated Plaintiff at the request of her then primary care physician, Dr. Gajulapalli, because she was applying for disability secondary to fibromyalgia and chronic fatigue syndrome (CFS) (Tr. 332, 364).  Plaintiff stated that she was diagnosed in 2008, but was not "officially followed" by a physician for those conditions (Tr. 332). Dr. Gajulapalli and her weight management physician, Dr. Ronald Magliola, were aware of the conditions (Tr. 332).  Plaintiff stated that her last job was in April 2001, when she was let go because of fatigue (Tr. 332).   Since April 2011, Plaintiff said that she had been working part-time as a

babysitter and dog sitter and helped a friend manage her checkbook (Tr. 31, 332).

Plaintiff had not tried physical therapy or medications for fibromyalgia or CFS, which she felt was the "main source of disability" (Tr. 332).  Plaintiff stated that she did not need a walker or cane to ambulate (Tr. 332), and she reported no numbness and "rarely" had aches and pains (Tr. 333).  On examination, Plaintiff had 2+ reflexes, normal sensation, 5/5 strength, no edema and full range of motion in the upper and lower extremities; no evidence of spasm or trigger points; normal back range of motion; and a normal gait (Tr. 334).  Drs. Harris and Hashem noted that Plaintiff had not exhausted conservative measures to help with her symptoms (Tr. 334).  Given that Plaintiff had not tried therapy or medications to help relieve her symptoms, they did not recommend disability for Plaintiff at this time (Tr. 334).  They prescribed medication, referred Plaintiff to physical therapy, and instructed her to increase her activity (Tr. 334, 337).  Plaintiff was to return in two to three months for a reevaluation (Tr. 334).

In September 2012, Plaintiff established primary care with Ryan Boente, M.D. (Tr. 303).  She told Dr. Boente that she was applying for social security due to a poor sleep schedule, which she attributed to chronic fatigue (Tr. 303).  She told Dr. Boente that she was being followed by PM&R (Tr. 303).

In October 2012 and February 2013, Gerald Klyop, M.D. and Leigh Thomas, M.D. opined that Plaintiff could perform a range of medium work (Tr. 80-81, 107-109).

In February 2013, Dr. Magliola, who saw Plaintiff for weight management, wrote a letter in support of Plaintiff's application for disability (Tr. 608).  Dr. Magliola had treated Plaintiff since January 2010, and noted that she had reported symptoms consistent with fibromyalgia and CFS (Tr. 608).  He stated that no concurrent neurologic disorder had been diagnosed (Tr. 608).  Dr. Magliola stated that Plaintiff's chronic musculoskeletal pain and tenderness was well-established fibromyalgia

3

trigger points especially in her chest and arms (Tr. 608).  Dr. Magliola also noted that Plaintiff reported that it took her two to three days to recover from gardening and walking around her yard, and had to alter her activities (Tr. 608).  He noted that while Plaintiff appeared well on the surface, after probing, he saw the ramifications of her conditions, which included difficulty standing for more than several minutes and trouble writing (Tr. 608).  He stated that Plaintiff had normal strength that was limited only by pain (Tr. 608).  Dr. Magliola also stated that he found her ability to perform activities of daily living and lifestyle modification to be "very inconsistent" (Tr. 608).  He was "amazed" that she was able to make "great progress" some of the time, but then "equally amazed by her extreme sluggishness and distractibility in the office" (Tr. 608).

In July 2013, Dr. Magliola completed a medical source statement (Tr. 892-893).  Dr. Magliola opined that Plaintiff could lift/carry ten pounds occasionally and five pounds frequently; stand/walk for a total of four hours in an eight-hour workday, one-half hour without interruption; sit for a total of eight hours in an eight-hour workday, four hours without interruption; and had other limitations, including postural and environmental limitations (Tr. 892-893).  Dr. Magliola noted that his assessment was supported by chronic fatigue syndrome and tenderness at established fibromyalgia tender points, and Plaintiff's "[r]eport of lengthy recovery periods" (Tr. 892-893).  Dr. Magliola noted that Plaintiff's pain was "mild," and that she was not prescribed a cane or walker (Tr. 893).

In May 27, 2014, Dr. Boente also completed a medical source statement (Tr. 1052-1053).  Dr. Boente opined that Plaintiff could lift/carry five pounds occasionally, two pounds frequently; stand/walk a total of two hours in an eight-hour workday, one-fourth hour without interruption; sit a totalof three hours in an eight-hour workday, one hour without interruption; and had other limitations, including postural and manipulative limitations (Tr. 1052-1053).  Dr. Boente also opined that Plaintiff required additional rest periods of five hours during an eight-hour workday (Tr. 1053).

Dr. Boente noted that his assessment was supported by chronic fatigue syndrome, extra fatigue reducing daily capacity to function, generalized weakness, sleep disturbance, and post-exertional fatigue (Tr. 1052-1053).  Dr. Boente noted that Plaintiff's pain was "mild," and that she was not prescribed a cane or walker (Tr. 1053).

## IV.    SUMMARY OF TESTIMONY

Plaintiff testified that she loads her dishwasher and washes dishes sometimes, does laundry occasionally, and that she shops sometimes with her sister, but it wears her out (Tr. 26-27).  She is most alert in the evenings and sleeps until noon (Tr. 29). If she has any activity, she gets worn out and it will take two days to a week to recuperate (Tr. 32, 43-44).  She can walk between six and twelve minutes, but then will crash (become exhausted) (Tr. 44).  She has two or three headaches a month, and will need to recuperate for several days afterward (Tr. 45).  Plaintiff also testified that on a bad day, she will spend time in bed or sitting in bed.  On a good day, she will spend a couple of hours in bed in the morning and again in the afternoon (Tr. 48).

Thereafter, the vocational expert at Plaintiff's hearing identified jobs Plaintiff could perform if she had the residual functional capacity found by the ALJ (Tr. 13, 49-50).   If she required additional breaks lasting fifteen minutes, would be off task more than twenty percent, or would be absent at least three times per month, then no jobs could be performed (Tr. 50-52).

## V.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income.  These steps are:

1.       An individual who is working and engaging in substantial gainful

5

activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *See* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g).
Therefore, this Court is limited to determining whether substantial evidence supports the
Commissioner's findings and whether the Commissioner applied the correct legal standards. *See,
Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision,
even if substantial evidence exists in the record that would have supported an opposite conclusion, so
long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social
Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence,
but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence
that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id.,
Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole.
*See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).


**VII.**    **ANALYSIS**

Plaintiff asserts one assignment of error:

WHETHER THE ALJ FAILED TO PROPERLY EVALUATE THE
OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS, RESULTING IN
A DECISION PREJUDICIAL TO THE PLAINTIFF AND LACKING THE
SUPPORT OF SUBSTANTIAL EVIDENCE.


The ALJ correctly determined that, despite her impairments, Plaintiff retained the residual
functional capacityy (RFC) to perform a range of light work, but that she required a sit/stand option
every hour for five minutes; could occasionally stoop, kneel, crouch, and crawl; could not climb
ladders, ropes, and scaffolds; could frequently reach in all directions; could frequently handle, feel,
and finger; and was precluded from industrial hazards, temperature extremes, humidity, or
concentrated levels of industrial irritants, such as gases and fumes (Tr. 13). *See,* 20 C.F.R. Section

7

404.1545(a)(1) (A claimant's residual functional capacity is the most she can do despite her limitations). In determining her RFC, Plaintiff argues that the ALJ erred by rejecting the opinions of treating physicians, Drs. Boente and Magliola (Pl. Br. 12-17). Plaintiff contends that the ALJ's analysis of their opinions was flawed, and she did not provide "good reasons" for rejecting the opinions. *Id.*

A treating source opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. Section 404.1527(c)(2); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) ("As we held in *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), a social security ALJ may properly discount a treating physician's opinion of disability: '[t]his court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.'"). When a treating source opinion is not given controlling weight, the ALJ mus consider the following factors: the length, nature, and extent of treatment relationship; evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. Section 404.1527(c). The ALJ will then state what weight she is giving the opinion and provide good reasons for doing so. *Id.* The ALJ is responsible for making factual and legal determinations, and for weighing the record evidence, including physicians' opinions, and resolving conflicts therein. *See, Richardson*, 402 U.S. at 399.

Plaintiff incorrectly relies upon *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) (Pl. Br. 16-17). However, even if the ALJ did not explicitly analyze each of the factors, the Commissioner argues that the ALJ provided good reasons for finding that the opinions of Drs. Boente and Magliola were not entitled to the controlling weight under the treating physician rule. *See* 20

8

C.F.R. Section 404.1527; SSR 96-2p; *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (ALJ has duty to provide "good" reasons for the weight afforded to treating sources); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (an ALJ must provide "justifiable" reasons for discounting the opinions of treating physicians).  Although the opinions of the state agency reviewing physicians who opined that Plaintiff was capable of medium work were inconsistent with Drs. Boente's and Magliola's opinions, the ALJ did not rely on those opinions to discount the treating physician opinions (Tr. 15, 80-81, 107-109).  The ALJ correctly determined that Plaintiff had greater limitations, and concluded that Plaintiff was capable of a range of light work (Tr. 15).  The ALJ, having considered the overall record evidence, gave sufficient reasons for the weight he gave opinions of the treating physicians.

The ALJ discounted the treating physicians' opinions based on Plaintiff's subjective complaints and that they were not supported by objective evidence (Tr. 15).  This is a valid reason for not completely adopting the opinions of the treating physicians.  *See* 20 C.F.R. Section 404.1527(c)(3) (ALJ properly considers supportability in weighing medical source opinions).  Nevertheless, Plaintiff argues that the ALJ erred because she placed an "undue emphasis on the absence of objective evidence" and the treating physicians' reliance on subjective complaints (Pl. Br. 13-14).  Plaintiff contends that in cases of fibromyalgia, "undue emphasis cannot be placed on the absence of objective medical evidence since the severity of fibromyalgia cannot be confirmed by objective clinical testing" (Pl. Br. 13).  Plaintiff also contends that CFS is a disease that cannot be proven by objective criteria (Pl. Br. 14).

However, a diagnosis alone does not indicate the level of severity of a condition in any particular individual.  *See, Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  The ALJ has a duty to make factual and legal determinations, and for weighing the record evidence, and resolving conflicts

9

therein. *See, Richardson*, 402 U.S. at 399. After considering the record as a whole, the ALJ correctly determined that the overall evidence demonstrated that Plaintiff's impairments were not disabling and the ALJ accounted for any limitations that resulted from Plaintiff's impairments. The ALJ considered Plaintiff's complaints of fibromyalgia, but did not find fibromyalgia to be a medically determinable impairment or a severe impairment (Tr. 11, 13). Hence, Plaintiff's reliance on *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp. 2d 986 (N.D. Ohio 2003), a case about fibromyalgia, is not valid (Pl. Br. 13-14). In any event, the ALJ did consider fibromyalgia in her evaluation of Plaintiff's complaints (Tr. 14). The ALJ recognized that fibromyalgia and CFS may be "closely related" (Pl. Br. 13, Tr. 13). Furthermore, the ALJ also correctly concluded that they are not evaluated the same. In this case, the ALJ evaluated Plaintiff's CFS pursuant to Social Security Ruling (SSR) 14-1p, "Evaluating Cases Involving the Chronic Fatigue Syndrome (CFS)." *See,* SSR 14-1p, 2014 WL 1371245 (April 3, 2014). Although SSR 14-1p references fibromyalgia as a condition that sometimes co-occurs with CFS, fibromyalgia is evaluated based on the criteria in SSR 12-2p. *See,* SSR 14-1p *3, SSR 14-1p does not abrogate SSR 12-2p or modify the evaluative process for determining whether a person with CFS is disabled under the Social Security Act. While CFS requires special consideration, SSR 14-1p states that "[t]he Act and our regulations further require that the impairment be established by medical evidence that consists of signs, symptoms, and laboratory findings; therefore, a claimant may not be found disabled on the basis of a person's statement of symptoms alone." *See,* SSR 14-1p at *2. SSR 14-1p sets out specific diagnostic symptoms, medical signs and laboratory findings, and other objective criteria for evaluating CFS, which the ALJ considered in this case (Tr. 13). *Id*. at *3-4. An ALJ may discount treating physician opinions, if they are not supported by objective medical evidence. *See,* 20 C.F.R. Section 404.1527(c)(3). Hence, the ALJ was permitted to consider the absence of objective findings as a basis for not completely adopting the treating physicians' opinions.

10

The Plaintiff further argues that the ALJ did not provide any other reason for giving Dr. Boente's opinion little weight (Pl. Br. 14). However, the ALJ's decision provides sufficient reasons for the weight he gave to both Drs. Boente's and Migliola's opinions and the reasons for his decision (Tr. 14-15). In addition, the ALJ provided other good reasons for discounting Drs. Boente's and Magliola's opinions.

The ALJ also considered the fact that Drs. Hashem and Harris, pain management physicians, were unwilling to find Plaintiff disabled (Tr. 14, 15, 334). These opinions contradicted the opinion of Dr. Boente, Plaintiff's primary care physician, who concluded that she was limited to less than sedentary work, and the opinion of Dr. Magliola, Plaintiff's weight management physician, who opined that she was limited to sedentary work (Tr. 15, 892-893, 1052-1053). In weighing Dr. Boente's and Dr. Magliola's opinions, the ALJ also reviewed evidence that contradicted their opinions that Plaintiff was limited to sedentary or less than sedentary work activities (Tr. 15). *See,* 20 C.F.R. Section 404.1527(c)(4). Furthermore, Drs. Boente and Magliola indicated that Plaintiff did not need a cane or walker to ambulate (Tr. 15, 893, 1053). The ALJ indicated that the clinical findings and notes of the pain specialists revealed few aches and pains, no numbness, a normal gait, normal reflexes, and 5/5 strength and full range of motion in bilateral upper and lower extremities (Tr. 14, 15, 332-334). Both Drs. Boente and Magliola described Plaintiff's pain as "mild" (Tr. 893, 1053). In addition, several mostly normal clinical findings do not support Plaintiff's claim that she was limited to performing sedentary work. Therefore, these findings do not support Drs. Boente and Magliola's extreme limitations. Hence, the basis for the reasoning why the ALJ gave little weight to their opinions.

In considering Dr. Magliola's opinion, the ALJ reviewed his clinical findings and observations (Tr. 15). The ALJ noted that Dr. Magliola reported that Plaintiff's activities of daily living and

11

lifestyle modifications were "very inconsistent" and the inconsistency in her "great progress" and her complaints and that there was no diagnosed neurological disorder (Tr. 15, 608).  The ALJ also indicated that Dr. Magliola noted that Plaintiff had trigger points in her chest and arms (Tr. 608).  This was contrary to Drs. Hashem's and Harris' clinical findings of no evidence of trigger points (Tr. 15, 334).  Dr. Magliola's findings conflicted with and were inconsistent with the clinical findings of Drs. Hashem and Harris, and, thus, provide a sufficient reason for the ALJ to question Dr. Magliola's opinion (Tr. 15).

The ALJ also noted that Plaintiff did not follow treatment recommendations and only took over-the-counter medications for pain (Tr. 14, 15, 33-34, 38-39).  Drs. Hashem and Harris considered this as a basis for their unwillingness to recommend disability (Tr. 14, 334).  Plaintiff acknowledged that she only saw Drs. Hashem and Harris once, and there was no evidence of any follow-up treatment despite her contrary report to Dr. Boente (Pl. Br. 16, 303, 334).  Furthermore, Plaintiff testified that she was not "very impressed" with the pain specialists and chose to rely on her online research over the physicians' recommendation for physical therapy, exercise, or medication (Tr. 14, 33-34, 39).  These factors support the ALJ's opinion that Plaintiff's symptoms were not as severe as she alleged.  *See, Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Hence, the ALJ correctly rejected extreme limitations of Drs. Boente and Magliola that were based on Plaintiff's subjective complaints.

Since Drs. Boente's and Magliola's opinions were not supported by the record, the ALJ correctly declined to give them controlling or significant weight.  *See*, 20 C.F.R. Section 404.1527(c)(2); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) ("[T]his court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are

consistent with the evidence.").

Plaintiff next argues that the ALJ "cherry picked" the record and ignored other evidence that supported the limitations in Dr. Magliola's opinion (Pl. Br. 15).  An ALJ is under no obligation to discuss all of the evidence in record.  *See, Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508. The evidence that Plaintiff cites (Pl. Br. 15,  Tr. 844-845, 885, 899, 1018) is mainly Plaintiff's own subjective complaints and limitations, thus, the reason the ALJ rejected Dr. Magliola's limitations (Pl. Br. 15).  In addition, there is also evidence that supported fewer restrictions (Tr. 343, 364, 647, 685, 746, 761, 800, 815, 869, 890, 1024, 1035).   Clearly, the ALJ was correct that this evidence undermined Plaintiff's subjective allegations of extreme limitations and that they were not as debilitating as Drs. Boente and Magliola opined (Tr. 15).

The ALJ correctly relied on the entire record to find that Plaintiff could work with some work-related limitations.  The ALJ's decision is supported by substantial evidence that Plaintiff was not disabled.  Since the ALJ's reasons for rejecting Drs. Boente's and Magliola's opinions are not in violation of the treating physician rule, his decision is hereby affirmed.

**VIII.   CONCLUSION**

Based upon a review of the  record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a range of light work with certain restrictions, and, therefore, was not disabled.  Hence, she is not entitled to DIB and SSI.

Dated: September 15, 2016.  */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE